**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

Terry Prior,

Plaintiff

v.

Oak Hollow of Georgetown Rehabilitation
Center, LLC.,

Defendant.

CASE NO: 2:24-cv-03521-DCN-MHC_____.

**COMPLAINT**
Jury Trial Requested

## INTRODUCTION

Plaintiff, Terry Prior (hereinafter "Plaintiff"), by and through the undersigned counsel, hereby brings the following Causes of Action for Race Discrimination in violation of 42 U.S.C § 1981, Violation of the Family and Medical Leave Act (FMLA), 29 U.S.C § 2601, *et seq.*, Retaliation in Violation of the Family and Medical Leave Act, Breach of Contract, and Breach of Contract with Fraudulent Intent, against Defendant Oak Hollow of Georgetown Rehabilitation Center, LLC (hereinafter "Defendant"), based upon the following allegations:

## PARTIES

1. Plaintiff is a citizen of the state of South Carolina residing in Georgetown County, South Carolina within this Judicial District, and he is a former employee of Defendant.

2. Upon information and belief, Defendant is a for-profit corporation organized and existing under the laws of the State of South Carolina that both does business and can be found in Georgetown, South Carolina.

**JURISDICTION AND VENUE**

3.  The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343, and 29 U.S.C. §§ 2601, *et seq.*; this being a proceeding to enforce rights and remedies secured under 42 U.S.C. § 1981 and other Federal Statutes. This Court also has pendant and supplementary jurisdiction over so much of this action as is based on state law.

4.  Venue is proper in the Charleston Division of this judicial district pursuant to 28 U.S.C Section 1391(b), in that Plaintiff resides in this district, Defendant does business and may be found in this district, and it is the district in which the herein complained of violations occurred.

**STATEMENT OF FACTS**

5.  Plaintiff is a plumber by trade and began his employment with Defendant on or about September 15, 2008.

6.  Plaintiff diligently and enthusiastically performed his job allowing him to excel.

7.  Plaintiff was promoted to the position of Maintenance Director because of his diligent and skillful job performance.

8.  As a Maintenance Director, Plaintiff functioned primarily as a Manager/Supervisor overseeing maintenance personnel.

9.  The essential duties and responsibilities of a Maintenance Director included recruiting, hiring, providing orientation and training, and the retention of sufficient staff qualified to carry out responsibilities of the physical plant department.

10. Due to Plaintiff's work ethic and commitment, he was offered, accepted, and simultaneously held job titles of Maintenance Director, Laundry Supervisor, and Environmental Services Manager.

11. Each of these titles required Plaintiff to function in a managerial/supervisory capacity.

12. On or about September 30, 2022, Plaintiff was injured on the job through no fault of his own.

13. On behalf of Plaintiff, Human Resource Director Molly Jones appropriately prepared documents initiating a Workers' Compensation Claim.

14. On or about October 3, 2022, Plaintiff's treating physician preliminarily diagnosed his injury as a right rotator cuff tear, and scheduled him for an MRI to both confirm the diagnosis and identify the extent of the injury.

15. Thereafter, Plaintiff returned to work with restrictions requiring no use of his right arm until after MRI results were received.

16. Upon information and belief, Defendant came under new management sometime between September and December of 2022.

17. Resultingly, upon information and belief, Defendant began instituting measures to improve efficiency and reduce costs.

18. These measures included, but are not limited to, scrutinizing and/or delaying approval for ordinary supply and equipment purchases necessary for Plaintiff to effectively oversee the requirements of his position.

19. In one instance, Plaintiff was verbally rebuked and blamed for allowing the building exterior and sidewalks to become unsightly.

20. When Plaintiff explained that, after more than one request, he still had not received approval for purchasing the pressure washer needed to address this issue, his explanation was described as an excuse.

21. On or about December 1, 2022, approximately three (3) months following his workplace injury, Plaintiff was informed that MRI results confirmed the diagnosis of a right rotator cuff tear, and that surgical intervention would be required.

22. Plaintiff's out-patient surgical procedure was tentatively scheduled for January of 2023.

23. Immediately thereafter, Plaintiff updated Defendant regarding his medical status.

24. Accordingly, he requested protected leave under the FMLA in anticipation of the January 2023 procedure.

25. Plaintiff's leave under the FMLA was subsequently approved by Defendant.

26. Moreover, Plaintiff was directly and impliedly assured by Defendant that his employment was secure, and that Defendant would support and comply with reasonable requirements necessary for his recovery.

27. In the days/weeks leading up to his approved FMLA departure date, Plaintiff continued working for Defendant with restrictions requiring no lifting over 10 lbs., and no overhead reaching until after surgery.

28. Plaintiff's protected leave began on January 26, 2023.

29. On or about April 12, 2023, Plaintiff notified Defendant that his treating physician approved his return to work for April 19, 2023.

30. However, Plaintiff's return would be with continued light-duty restrictions requiring no overhead activities, no lifting of more than ten (10) pounds, and no reaching with the right shoulder.

31. These work restrictions were effectively the same limitations accommodated by Defendant from October 3, 2022, until Plaintiff's January 26, 2023 leave under the FMLA.

32. Having endured 11-weeks of significantly limited mobility, Plaintiff was excited to actually be getting back to work.

33. Defendant's response to Plaintiff's prospective return with restrictions, however, was not met with Plaintiff's enthusiasm.

34. Upon arriving at work on the morning of April 19, 2023, Plaintiff was immediately met with written notice of termination from the company that he diligently committed almost fifteen (15) years of his life.

35. Surprisingly, Defendant's stated reason for termination was that accommodating Plaintiff's return-to-work limitations imposed an undue hardship on the company.

36. Plaintiff was then told he could reapply for his position upon medical release without restrictions.

37. As a Manager/Supervisor of approximately 8-10 subordinate staff members, it was rarely necessary for Plaintiff to personally execute the physical duties for which he had oversight.

38. Moreover, Defendant had previously accommodated Plaintiff's more restrictive limitations beginning at the time of his workplace injury in September of 2022, until taking protected leave under the FMLA on January 26, 2023.

39. Thus, it appears Defendant's stated reason for Plaintiff's termination is both patently and demonstrably false.

40. Upon information and belief, Defendant has, in the past, reasonably accommodated Caucasian employees of similar job classification, education and/or experience, and job duties without issue or adverse action.

41. Despite his embarrassment and incredible disappointment, Plaintiff nevertheless attempted to minimize the financial impact of losing his job by securing small independent contracting jobs utilizing his skill and training as a plumber.

42. It is Plaintiff's contention that Defendant was clearly unhappy with his exercise of protected leave resulting from the workplace injury.

43. When Plaintiff attempted his timely return to work, albeit with continued limitations, Defendant violated his protected rights by taking an unlawful adverse employment action against him.

44. At the time of Plaintiff's termination, his Workers' Compensation Claim was still pending.

45. Plaintiff also had not exhausted all twelve (12) weeks of protected leave under the FMLA.

46. Given Plaintiff's long and unblemished work history with Defendant, Defendant's offer to consider Plaintiff for reemployment upon full medical release without limitation makes clear that the termination would not have occurred but for Plaintiff's continued need for reasonable accommodation during his ongoing recovery from the workplace injury.

## FIRST CAUSE OF ACTION
### *Race Discrimination in Violation of 42 USC §1981*

47. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

48. Plaintiff is a member of a protected class on the basis of race, in that he is an African American man.

49. Plaintiff, in all respects, was performing his job in a manner that was consistent with Defendant's legitimate business expectations.

50. Upon information and belief, Defendant has previously provided reasonable accommodations to Caucasian employees similarly situated to Plaintiff in the areas of job

classification, education and/or experience, and job duties upon returning to work following a workplace injury.

51. Moreover, upon information and belief, Defendant has not retaliated against similarly situated Caucasian employees by terminating them due to light duty restrictions upon returning from a workplace injury.

52. Here, Defendant terminated Plaintiff when he attempted to secure medically advised light duty restrictions upon returning from a workplace injury.

53. Defendant's hereinabove described conduct constitutes unlawful discrimination and unlawful retaliation in violation of 42 USC § 1981.

54. Upon information and belief, Defendant has previously permitted Caucasian employees similarly situated to Plaintiff in the areas of job classification, education and/or experience, and job duties to exercise rights protected by the FMLA.

55. Moreover, upon information and belief, Defendant has not retaliated against similarly situated Caucasian employees by terminating them for exercising their protected FMLA rights.

56. Here, Defendant terminated Plaintiff immediately upon returning to work, following his exercise of protected FMLA rights.

57. Defendant's hereinabove described conduct constitutes both unlawful discrimination and unlawful retaliation in violation of 42 USC § 1981.

58. Defendant's actions were intentional, reckless, malicious, and with a willful and wanton disregard for public policy, as well as the State and Federally protected rights of Plaintiff.

59. As a direct and proximate result of Defendant's unlawful actions, Plaintiff has suffered substantial embarrassment, emotional distress, lost wages, consequential and other damages.

## SECOND CAUSE OF ACTION
### *Violation Under Family & Medical Leave Act*

60. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

61. Plaintiff is a covered employee under the FMLA in that he was employed by Defendant for at least twelve (12) months, and for at least 1,250 hours, during the twelve-month period prior to receiving FMLA leave, and both reported to and was assigned work from a worksite that, upon information and belief, did not employ fewer than fifty (50) employees within a seventy-five (75) mile radius of that worksite.

62. Upon information and belief, Defendant is a covered employer under the FMLA in that it is in commerce or industry (or engages in activities affecting commerce) and employs fifty (50) or more employees for each working day during each of twenty (20) or more calendar work weeks in the current or preceding calendar year.

63. Plaintiff, in all respects and at all relevant times, was performing his job in a manner consistent with Defendant's legitimate business expectations.

64. The FMLA permits eligible employees of covered employers to take unpaid, job-protected leave for a serious health condition that prevents them from performing the functions of their position.  29 U.S.C. § 2612(a)(1)(d).

65. Employers are precluded from restraining, denying, or interfering with an employee's exercise of rights protected under the FMLA.  29 U.S.C. § 2615(a)(1).

66. Further, it is unlawful for an employer to discharge, discriminate against, or retaliate against an employee for exercising their right to protected leave under the FMLA. 29 U.S.C § 2615(b).

67. Here, Plaintiff sustained a serious injury requiring surgical intervention and continuing treatment by his healthcare provider.

68. Following the injury, Plaintiff complied with the FMLA requirements for covered employees as described above.

69. Defendant violated Plaintiff's protected FMLA rights by discharging him before fully exhausting his protected leave, rather than restoring him to the position held when his leave commenced.

70. Plaintiff asserts Defendant's stated reason for discharge, as described above, was merely a pretextual effort to disguise its true reason for discharge—Plaintiff's exercise of his protected rights under the FMLA.

71. Plaintiff is convinced that, but for his need for continued workplace restrictions, and his effort to exercise same, his employment would not have been terminated.

72. As a result of Defendant's actions, Plaintiff has suffered damages in the form of lost wages, income and benefits, emotional distress, mental anguish, loss of enjoyment of life, embarrassment, humiliation, consequential, and other damages.

73. Defendant's actions, as set forth above, were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of Plaintiff. Therefore, Plaintiff is informed and believes he is entitled to recovery of liquidated and punitive damages from Defendant.

## THIRD CAUSE OF ACTION
### *Unlawful Retaliation Under Family & Medical Leave Act*

74. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

75. Plaintiff engaged in a protected activity when he requested leave under the FMLA; following a workplace injury causing him to sustain serious injury requiring continued treatment by his healthcare provider.

76. Plaintiff's treating physician approved his return-to-work effective April 19, 2023 with light duty work restrictions; as Plaintiff remained under the continuing care and treatment of his doctor.

77. Upon Plaintiff's April 19, 2023 return-to-work, he was not restored to his previous position as required by law.

78. Defendant, following Plaintiff's medically advised request for light duty restrictions, unlawfully retaliated against Plaintiff by discharging him for attempting to exercise his protected rights.

79. Further, Defendant's adverse action occurred immediately upon Plaintiff's return from, and in exercise of, his protected leave.

80. Because Defendant presumably knew that it was unlawful for an employer to retaliate against an employee for exercising a protected right, Defendant justified Plaintiff's discharge by stating that the temporary ten (10) lb. lifting and no reaching restrictions required by his physician imposed an undue hardship on the company.

81. This, however, directly contradicts Defendant's previous conduct; in which it accommodated Plaintiff's more restrictive limitations, without issue, for approximately four (4) months prior to Plaintiff's surgery in January of 2023..

82. Thus, Defendant's stated reason for discharge is both patently and demonstrably false, and a clear effort to disguise its true reason for terminating Plaintiff.

83. As a result of Defendant's actions, Plaintiff has suffered damages in the form of lost wages, income and benefits, emotional distress, mental anguish, loss of enjoyment of life, embarrassment, humiliation, consequential and other damages.

84. Defendant's actions, as set forth above, were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for the federally protected rights of Plaintiff.  Therefore, Plaintiff is informed and believes he is entitled to recovery of liquidated punitive damages from Defendant.

### FOURTH CAUSE OF ACTION
*Breach of Contract*

85. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

86. Plaintiff, in all respects and at all relevant times, was performing his job in a manner consistent with Defendant's legitimate business expectations.

87. On or about September 30, 2022, through no fault of his own, Plaintiff sustained a workplace injury at Defendant's Georgetown, SC facility.

88. Plaintiff's workplace injury occurred as a result of his employment, while acting within the course and scope of Defendant's employ.

89. Immediately following Plaintiff's workplace injury, Defendant initiated a Workers Compensation Claim on Plaintiff's behalf.

90. At the time of Plaintiff's termination from Defendant's employ, the Workers Compensation Claim was still pending.

91. Upon information and belief, Defendant maintains a handbook of policies and procedures regarding workplace injuries, code of conduct, and the fair and equitable treatment of its employees.

92. Further, Defendant's handbook of policies and procedures promises adherence to all State and Federal laws protecting Plaintiff's rights.

93. Plaintiff relied on the promises and protections expressed in Defendant's handbook of policies and procedures.

94. Further, Plaintiff was consistently assured by Defendant, both verbally and impliedly through its handbook, that its promises of fair and equitable treatment would be protected and maintained.

95. Plaintiff believed Defendant would honor its promises, and the SC Workers' Compensation law, by protecting his job and career while recovering from his workplace injury.

96. The promissory and mandatory terms of Defendant's assurances form a contract with Plaintiff beyond the at-will employment relationship.

97. By failing to treat Plaintiff fairly and equitably as agreed, Defendant breached its contractual promises, protections, policies and procedures when it terminated Plaintiff on April 19, 2023.

98. As a result of Defendant's actions, Plaintiff has suffered damages in the form of lost wages, income and benefits, emotional distress, mental anguish, loss of enjoyment of life, embarrassment, humiliation, economic injuries, as well as consequential and other damages.

99. Defendant's actions, as set forth above, were undertaken intentionally, willfully, wantonly, recklessly, maliciously, and with utter disregard for public policy, as well as the State and

Federally protected rights of Plaintiff.  Therefore, Plaintiff is informed and believes he is entitled to recovery of liquidated and punitive damages from Defendant.

### FIFTH CAUSE OF ACTION
### *Breach of Contract with Fraudulent Intent*

100. Plaintiff hereby incorporates each and every allegation contained in the preceding paragraphs as if set forth verbatim herein.

101. Defendant has failed to fulfill its duties and obligations under its own written policies and procedures; which together with their promissory and mandatory terms, form a contract with Plaintiff beyond the at-will employment relationship.

102. Defendant breached the terms thereof, by reason of an intentional design to defraud Plaintiff in an effort to reduce costs.

103. Defendant fraudulently and untruthfully attempted to disguise its true motives by alleging Plaintiff's request for accommodation imposed an undue hardship, after having earlier accommodated more restrictive limitations related to the same injury.

104. Upon information and belief, Plaintiff's salary and associated costs, along with Defendant's continued inability to get full value from Plaintiff's labor, conflicted with Defendant's efficiency and cost cutting measures.

105. As a result of Defendant's actions, Plaintiff has suffered damages in the form of lost wages, income and benefits, emotional distress, mental anguish, loss of enjoyment of life, embarrassment, humiliation, as well as consequential and other damages.

106. Defendant's actions, as set forth above, were undertaken intentionally, willfully, wantonly, recklessly, maliciously and with utter disregard for public policy, and the State and Federally protected rights of Plaintiff.  Therefore, Plaintiff is informed and believes he is entitled to recovery of liquidated and punitive damages from Defendant.

**JURY TRIAL REQUESTED**

107. Plaintiff hereby requests a jury trial.

**PRAYER FOR RELIEF**

*WHEREFORE*, Plaintiff prays that this Honorable Court declare that Defendant's herein complained of actions violated the rights guaranteed to Plaintiff, and issue its judgment as follows:

A. Declaring the actions complained of herein illegal;

B. Issuing an injunction enjoining Defendant, their agents, employees, successors, attorneys and those acting in concert or participation with Defendant from engaging in the unlawful practices set forth herein, as well as any other employment practices shown to be in violation of State and Federal law;

C. Awarding Plaintiff compensatory and punitive damages for each Cause of Action contained herein as appropriate, which the jury should find appropriate as a result of Defendant's unlawful actions; including, but not limited to, mental anguish, pain and suffering, harm to Plaintiff's economic opportunities, any back pay, front pay and future earnings with cost-of-living adjustments, prejudgment interest, fringe benefits, and retirement benefits;

D. Awarding Plaintiff his costs and expenses in this action, including reasonable attorney fees, and other litigation expenses; and

E. Granting such other and further relief as may be just and necessary to afford complete relief to Plaintiff in the discretion of this Honorable Court.

*(SIGNATURE BLOCK ON FOLLOWING PAGE)*

Respectfully Submitted,

_s/Donald Gist_____

Donald Gist (7178)
Daryl l. Bush (11694)

GIST LAW FIRM, P.A.
4400 North Main Street
Columbia, SC  29203
Tel:   (803) 771-8007
Fax:  (803)  771-0063
Email:  dtommygist@yahoo.com
            darylbush@gistlawfirm.com

***Attorneys for Plaintiff***

June 13, 2024